*JOYNES J.
Upon the face of the contract of September 1, 1864, there is no ambiguity. It recites that there 'are in existence two leases, which will expire on the 31st day of December, 1864 — one dated November 11, 1854, the other dated April 1, 1861 — and provides for a renewal of these leases for a term of five years, upon certain specified terms. But when we come to apply this contract to the subject matter, it appears that on the 20th November, 1861, a paper was executed containing a lease of the Swann pit until the 31st day of December, 1864, which paper refers to the lease of April, 1861, and• describes itself as “an addition and supplement” to the lease of April 1, 1861; and declares that it “shall be taken and considered as a part thereof.” A question then arises, whether the parties intended, by the contract of September 1, 1864, to renew the lease of April 1, 1861, as it originally stood, so as to exclude the Swann pit, or to renew that lease along with the “addition and supplement” of November 20, 1861, “as a part thereof,” so as to embrace the Swann pit. This presented a case of latent ambiguity, for the removal of which it was competent to show by parol evidence, what was the actual intention of the parties. The lease of November 20, 1861, was called part of that of April, 1861, so as to subject it, without the necessity of repetition, to the same conditions ; but it was still actually distinct from it, inasmuch as it related to different property, was made at a different time, reserved a distinct rent, and was, in some respects, subject to different conditions.
The only parol evidence in this case was the deposition of Morrisett, the lessor. He testified that the appellants expended a considerable sum in cleaning out and drifting the Swann pit, though they raised no coal from it; that they tried their best to raise coal from that pit, but failed, “because the coal was not there to raise.” *626 He further said *that he understood that the purpose of the appellants was to keep other persons from renting and working the Swann pit.
Though not so stated in terms, this witness seems to have had reference to what was done by the appellants during the original term, and to the motives which induced them to obtain the original ■ lease of the Swann pit. It cannot be supposed that they would allow the whole term of the original lease to expire without ascertaining whether or’ not coal could be found in that pit; and after ascertaining that no coal was there, they would have had no motive to keep other persons from renting and working it.
This evidence, given by the lessor himself, affords strong ground to believe that the parties did not intend to embrace the Swann pit in the contract of September 1, 1864. The appellants had no motive to renew the lease of that pit; the former lease had been a dead loss to .them of the rent .and of the money expended in cleaning out and drifting the pit. A renewal of the lease- must have entailed a like loss; and these facts were well known to the lessor.
The appellants excepted to the report of the Commissioner charging them with rent of the Swann pit under the contract of renewal, and supported the exception by an affidavit. This affidavit stated, among other things set forth by the appellants in a petition, that the appellants ' ‘never intended to renew the lease of that pit, and never imagined that they had done so; that in fact, long before the first lease expired, they withdrew their machinery, abandoned the possession of the pit, and never after-wards interfered with it in any manner whatever; and though they remained lessees until the first lease expired, and liable, as such, for the rent, yet after the expiration of that lease, they never asserted or claimed any title or intere’st in the Swann pit; never exercised any control over it, or had an3 *sort of possession of it; neither were they aware, until the report of Commissioner Fvans was made, that any person regarded them as tenants of the Swann pit, or responsible for rent in any way or to any extent. And all these allegations they are prepared to sustain by proofs, if the opportunity be afforded them to do ,'so. ” The appellants, in their petition, asked that the report of the Commissioner might be corrected by excluding the rent charged for the Swann pit, and that, if necessary, the report might be recommitted for that purpose, with leave to the petitioners to adduce proof of the allegations made in their petition.
The Circuit Court overruled the exception and confirmed the report, being “of opinion that, according to the true intent of the contracting parties, the lease of the Swann pit was incorporated with and made a part of the original lease of April 1, 1861, and that the whole lease was renewed, including the Swann pit, as part of the demised premises, by the lease of September 1, 1864.” It would seem from this, that the court decided the case upon the construction of the several leases, and without reference to the parol evidence. For the reasons already given, I think the case must be decided upon the parol evidence, and that it is at least doubtful, from the evidence in the record, whether the parties did intend to embrace the Swann pit in the contract of renewal.
But it is evident that the parties did not go fully into the parol evidence bearing on this question. It is alleged by the appellants, in their petition, that they did not do so themselves, and they cannot complain if an opportunity is given to the other parties to adduce further evidence.
I am, therefore, of opinion that the Circuit Court, instead of overruling the exception of the appellants, should have recommitted the report, .with instructions to the Commissioner to enquire whether it was the actual intention of the parties to embrace or to exclude the Swann *pit in the renewed lease, and with leave to all parties to take further evidence on that subject.
I think the decree should be reversed.
The other judges concurred in the opinion of Joynes, J.
Decree reversed.